**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KARLYTTA M. STANCIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-789-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Karlytta M. Stancil ("Stancil"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. terminating the disability benefits that Stancil received as a child when she reached the age of 18. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Stancil appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Stancil was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Stancil was 21 years old at the time of the hearing before the ALJ on February 25, 2009. (R. 590). She indicated that she had graduated from high school, although she had attended special education classes because she had a learning disability. *Id.* After graduation, she attended vocational rehabilitation and worked at Grace Management. (R. 590-91). She testified that she only worked there two weeks because her doctor put her on Paxil, and she could no longer stay awake. (R. 591).

Stancil testified that her physician prescribed Paxil because she had been depressed and couldn't sleep. (R. 591-92). She said that her depression affected her by making her unable and scared to talk to people. (R. 592). She liked to stay by herself, and she slept a lot. *Id.* Stancil testified that she had been treated for depression at Spartanburg Mental Health for about a year before the time of the hearing. *Id.*

On a typical day, she stayed in her room. *Id.* She testified that she did not cook, do laundry, mop, vacuum, or do yard work. (R. 592-93). She swept floors, but she only occasionally washed dishes, folded the laundry, and did other cleaning. (R. 592-94). She had a driver's license, and she occasionally drove. (R. 594).

Stancil's grandmother, Marcella Perkins, testified at the hearing. (R. 597-604). Ms. Perkins testified that Stancil had lived with her for her entire life. (R. 598). She described Stancil's treatment at Spartanburg as trying to "get her out of her shell," but she said that Stancil stayed so sleepy that it was difficult. *Id.* She testified that Stancil slept a lot both day and night, and that she preferred to stay by herself. (R. 598-99). She had been attempting to get Stancil to spend more time out of her bedroom and socialize with family. (R. 599). Stancil occasionally cleaned, carried out the trash, helped Ms. Perkins cook, and tried to use the washing machine. *Id.*

Ms. Perkins testified that she allowed Stancil to drive by herself one time, and Stancil fell asleep. (R. 600). Ms. Perkins described Stancil as depressed and scared to interact with people. (R. 601-03).

Stancil was given a psychological evaluation by James N. Ruffing, Psy. D. on February 15, 2006. (R. 424-27). Dr. Ruffing observed "leg shaking" during the evaluation that he thought could have been indicative of anxiety. (R. 425). He observed that Stancil had good attention and focus and demonstrated normal cognitive processing speed. *Id.* He believed that anxiety may have interfered with Stancil's ability to remember words after a five-minute delay, because she did not have other problems with questions related to memory functioning. (R. 425-26). Stancil had a verbal IQ of 72, a performance IQ of 81, and a full scale IQ of 75. (R. 424). Dr. Ruffing stated that this placed Stancil in the 5th percentile which was in the borderline classification. (R. 426). Stancil scored only on the second-grade level in reading, and he believed that she would likely struggle in completing a job application or reading texts such as newspaper articles or instruction manuals. *Id.* Dr. Ruffing's psychological impressions were borderline intellectual functioning and functional illiteracy. *Id.* He stated that Stancil might require assistance managing her financial affairs. (R. 427). His final sentence was that Stancil "would likely require some though possibly semi-supervised mentoring in a work environment, but should have the capacity to perform repetitive type tasks." *Id.*

Nonexamining consultant D.C. Price, Ph.D. completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment dated March 16, 2006. (R. 405-23). For Listing 12.02, Dr. Price noted Stancil's diagnosis of functional illiteracy, and for Listing 12.05, he noted Stancil's current and previous IQ scores. (R. 406, 409). For the "Paragraph B

Criteria,"[1] Dr. Price found that Stancil had a moderate degree of limitation in all three areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 415). In the "Consultant's Notes" portion of the form, Dr. Price gave a summary of Dr. Ruffing's evaluation and a teacher's evaluation, and he noted Stancil's 2002 IQ scores. (R. 417).

On the Mental Residual Functional Capacity Assessment, Dr. Price found Stancil to be moderately limited in five mental activities: her ability to understand and remember detailed instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to interact appropriately with the general public; and her ability to set realistic goals or make plans independently of others. (R. 419-20). Dr. Price gave narrative comments, and among those comments was his statement that Stancil could "attend to and perform simple tasks without special supervision for at least 2-hour periods." (R. 421).

The administrative record includes an adult psychosocial history from Prestera Mental Health Centers dated September 14, 2006. (R. 393-96). The evaluation states that it was prompted by Stancil's difficulty in interacting with family and peers. (R. 393). Stancil's special education placement and social withdrawal were noted. *Id.* The evaluation states that Stancil was referred for further evaluation to determine if medication was appropriate to address anxiety

---

[1] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

and anhedonia[2] symptoms. (R. 396). Provisional diagnoses on Axis I[3] were dysthymic disorder[4] and agoraphobia without history of panic disorder. *Id.* A note on Axis II was to rule out mild mental retardation due to fetal exposure to crack cocaine. *Id.* The evaluator scored Stancil's current Global Assessment of Functioning ("GAF")[5] as 44. *Id.*

A "To Whom It May Concern" letter dated July 18, 2008 signed by James Donald Franklin III, M.D. of Regenesis Community Health Center stated that Stancil was under his care for "various medical problems. She has a disability and requires special needs." (R. 385).

The administrative record contains medical documents that apparently reflect that Stancil received mental health treatment through the South Carolina Department of Mental Health (the "Spartanburg Clinic"). (R. 359-83, 564-75). An Initial Clinical Assessment was dated October 14, 2008. (R. 365-72). The initial assessment noted that Stancil admitted to thoughts of hurting or killing relatives, but also stated that she did not intend to act on those thoughts. (R. 366). The assessment stated that Paxil had reduced Stancil's isolation. *Id.* It also stated that she slept well

---

[2] Anhedonia is "total loss of feeling of pleasure in acts that normally give pleasure." Dorland's Illustrated Medical Dictionary 92 (31st ed. 2007).

[3] The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereafter "DSM-IV").

[4] Dysthymic disorder is characterized by symptoms of mild depression. Dorland's Illustrated Medical Dictionary 590 (31st ed. 2007).

[5] The GAF score represents Axis V of a Multiaxial Assessment system. DSM-IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id*.

5

since she started Paxil about one month earlier. (R. 371). An Axis I diagnosis was stated as major depressive disorder, single episode, severe, with psychotic features. (R. 372). Axis II had a note to rule out antisocial personality disorder. *Id.* Stancil's GAF was scored as 22. *Id.*

A Spartanburg Clinic document dated October 22, 2008 and signed by Catherine Kreiser, M.D. states that Stancil had been placed on Paxil approximately six months earlier by Dr. Franklin at ReGenesis who had referred Stancil to the Spartanburg Clinic. (R. 362-63). After a review of Stancil's history, Dr. Kreiser stated that Stancil was very quiet and made poor eye contact, but there was no evidence of psychosis. (R. 363). She also observed mild psychomotor retardation. *Id.* She scored Stancil's GAF as 55. *Id.* Dr. Kreiser's impression on Axis I was major depressive disorder. *Id.* On Axis II, she gave alternative diagnoses of borderline intellectual functioning versus mild mental retardation. *Id.* She discontinued Paxil due to hypersomnia and started fluoxetine. *Id.* On November 6, 2008, E. Freeman Smith, M.D. said that Stancil and Ms. Perkins said that Stancil was doing well on fluoxetine with no adverse effects, and he continued the medication. (R. 361).

Stancil saw a therapist at Spartanburg Clinic on a regular basis from October 2008 through October 2009. (R. 373-83, 571-75). A medication sheet indicates that fluoxetine was discontinued and Paxil was restarted in April 2009. (R. 566). Trazadone was added in May 2009. *Id.* A note dated August 21, 2009 by Dr. Kreiser stated that Stancil complained of irritability and anger and that Ms. Perkins said Stancil slept day and night. *Id.* Stancil saw Dr. Smith on September 17, 2009, and she had made an emergency room visit after her previous appointment due to a fight with her sister. (R. 568). Due to Stancil's complaint of irritability and anger, Dr. Smith discontinued Paxil and Trazadone and began a trial of Depakote. *Id.* At a follow up appointment on October 6, 2009, Dr. Smith found Stancil to be more spontaneous and

talkative, and he said that she did not appear anxious. (R. 567). He continued the Depakote. *Id.* The medication sheet appears to indicate that Paxil and Trazadone were added back in at a later date. (R. 564-65).

Ms. Perkins and Stancil apparently moved to a different part of South Carolina, and Stancil was seen by a new physician in March 2010, when a Plan of Care was entered into. (R. 577-78). The new physician assessed Stancil with pervasive developmental disorder, not otherwise specified, with a note to rule out autistic disorder. (R. 581). The physician continued the medications that Stancil had received at the Spartanburg Clinic. A note in April 2010 stated that Stancil was doing "OK" on the medications, with stable mood, good sleep, and absence of aggression. (R. 579). It was noted that she continued to isolate herself in her room. *Id.* The physician assessed Stancil with pervasive development disorder, not otherwise specified and major depression and continued the same medications. *Id.*

## Procedural History

Stancil was found to be disabled when she was a child pursuant to Listing 112.05C due to her full scale IQ of 61 with cognitive deficits and decreased adaptive skills. (R. 59). Under the disability rule for adults, she was found to be not disabled when she turned 18 in March 2006. (R. 99). She was found to be not disabled by a disability hearing officer in 2006. (R. 58-63). A hearing before ALJ Gregory M. Wilson was held February 25, 2009 in Greenville, South Carolina. (R. 583-611). By decision dated May 20, 2009, the ALJ found that Stancil was not disabled. (R. 13-22). On October 29, 2010, the Appeals Council denied review of the ALJ's findings. (R. 2-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[6] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v.*

---

[6]Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ found that Stancil had been eligible for supplemental security income benefits until age 18. (R. 15). At Step Two, the ALJ found that Stancil had severe impairments of dysthymia with agoraphobic features and borderline intellectual functioning. *Id.* At Step Three, the ALJ found that Stancil's impairments did not meet any Listing. (R. 17-18).

In his RFC determination, the ALJ found that Stancil had the RFC to perform work at all exertional levels, with nonexertional limitations of being limited to "simple 1-2 step tasks in a low stress, non-production work environment with no public contact." (R. 18). At Step Four, Stancil had no past relevant work. (R. 20). At Step Five, the ALJ found there were a significant number of jobs in the national economy that Stancil could perform considering her age, education, work experience, and RFC. (R. 20-21). Therefore, the ALJ found that Stancil's disability ended on March 1, 2006, and Stancil had not become disabled again since that date. (R. 21).

### Review

Stancil raises several issues on appeal. The Court finds that the ALJ's decision was not sufficient in its consideration of Stancil's credibility, and therefore the Court must reverse the

decision and remand for further consideration. Because reversal is required on the issue of credibility, the Court does not address the other issues raised by Stancil.

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). The ALJ must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p, 1996 WL 374186 at *4; *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (in evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence).

> While a claimant's credibility is generally an issue reserved to the ALJ, the issue is reviewable to ensure that the underlying factual findings are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

*Swanson v. Barnhart*, 190 Fed. Appx. 655, 656 (10th Cir. 2006) (unpublished), *quoting Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (further quotations omitted).

Here the ALJ's minimal credibility assessment is flawed because the ALJ never mentioned the primary reason that Stancil testified kept her from being able to work: the side effect of sleepiness from her prescription medication Paxil. When the ALJ asked Stancil why she quit working in 2008, she testified that she couldn't stay awake because her doctor put her on medication. (R. 591-92). She testified that she slept a lot. (R. 592). Her grandmother testified that Stancil stayed sleepy during the day. (R. 598-99). In spite of the testimony of Stancil and her grandmother that sleepiness from Stancil's depression and the antidepressant medication was one reason why Stancil could not work, the Court has been unable to find any reference to this

testimony in the ALJ's decision.  (R. 13-22).

Without a discussion by the ALJ of the testimony that sleepiness was one reason why Stancil was disabled, and an explanation from the ALJ regarding why he rejected that testimony, the Court has no basis for reviewing the ALJ's decision.  *See Clifton v. Chater,* 79 F.2d 1007, 1009 (10th Cir. 1996) (bare conclusions are "beyond meaningful judicial review."); *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (ALJ's failure to include witness testimony in his decision, with no explanation for the omission, required reversal and remand); *Kepler*, 68 F.3d at 391 ("It is well settled that administrative agencies must give reasons for their decisions.") (citation omitted).  This reviewing Court will not draw conclusions for the ALJ, and he should make his reasoning clear on remand.  *Hamby v. Astrue*, 260 Fed. Appx. 108, 113 (10th Cir. 2008) (unpublished) (reversing in part because ALJ "failed to articulate his reasoning [regarding credibility assessment] with sufficient specificity").

It could be that there are sufficient reasons for finding that Stancil's claim that sleepiness made her disabled was not credible, but this Court declines to make this determination in the first instance.  *See Peeper v. Astrue*, 418 Fed. Appx. 760, 764-67 (10th Cir. 2011) (unpublished).  *Peeper* cited *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) for the proposition that a "*post hoc* effort to salvage the ALJ's decision would require [the court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process."  Therefore, in *Peeper*, while there might have been sufficient reasons for rejecting the claimant's allegations of disabling pain, the Tenth Circuit reversed for the Commissioner to make that determination.  *Peeper*, 418 Fed. Appx. at 767.

Because the errors of the ALJ related to credibility require reversal, the undersigned does not address the remaining contentions of Stancil.  On remand, the Commissioner should ensure

11

that any new decision sufficiently addresses all issues raised by Stancil.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 18th day of January, 2012.

_____
Paul J. Cleary
United States Magistrate Judge